DAN MALOY V. JOHN D. WAGNER ET AL.

No. A-1841. Decided February 2, 1949.
Rehearing overruled March 9, 1949.
(217 S. W., 2d Series, 667.)

*Lauderdale & Bowe,* of Mercedes and *L. Hamilton Lowe,* of Austin, for petitioners.

The Court of Civil Appeals erred in holding that there is no evidence in the record to sustaining the findings that "the facts are such as to withdraw said verbal contract from the operation of the statute of frauds, and in reversing the judgment of the court and rendering judgment that Maloy take nothing and pay the costs of suit. Said court also erred in holding that there was no evidence to show that Wagner had knowledge of the placing of valuable improvements on the land as would amount to an acquiescence therein. Wells v. Davis, 77 Texas 636, 14 S. W. 237; Lodge v. Leverton, 42 Texas 25; Eason v. Eason, 61 Texas 227; Bradley v. Owsley, 74 Texas 69, 11 S. W. 1052.

*Greer, Cox & Patterson,* of McAllen, *Strickland, Ewers & Wilkins,* and *J. E. Wilkins,* all of Mission, for respondents.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

Dan Maloy instituted this suit in the District Court of Hidalgo County, Texas, against John D. Wagner and his daughter, Mrs. A. B. DeKock, and her husband, for enforcement of a lease contract, made by Wagner, while owner of the land, with Maloy, as lessee, of forty acres in that county. Maloy sought also to enjoin defendants from interfering with his possession. The lease contract was oral and for a three-year term. The court at a hearing on the merits without the aid of a jury decreed performance of the contract and made permanent a temporary injunction securing enforcement of the lease previously granted. The Court of Civil Appeals reversed and rendered for the defendants, who are respondents here, on the ground that Maloy failed to discharge the burden of proof imposed upon him to show his right to enforcement. 212 S. W. (2d) 850. Writ of error was granted on Maloy's petition to determine whether, under the facts presented, the three-year oral contract to lease should be enforced.

The evidence, considered as required under the record, that is, in accord with Maloy's testimony, since the trial court found the facts in his favor, shows that Wagner went early in August, 1945, to see Maloy at his home some three-quarters of a mile from the tract in question for the purpose of leasing him the land. Wagner, knowing Maloy was an excellent farmer, and that the tract had become unprofitable under other tenancy because of being infested with noxious weeds and Johnson Grass,

*and that it was very unlevel,* requested Maloy to take it over. Maloy, also knowing the condition of the land, told Wagner that farming it would not be a sufficiency profitable undertaking to warrant his taking it over for a shorter period than from three to five years. Wagner, thinking he might want to dispose of the land and not wanting to tie it up too long, made this known to Maloy, but said he had realized nothing from it for the previous year. Maloy replied that he would not be interested in farming it for a shorter term than three years. Wagner then told him to go ahead and take it over and placed him in possession accordingly at the beginning of the term.

Good husbandry practices for faming such land required that it be disced repeatedly and "floated", that is, leveled by dragging over it a leveling drag implement preparatory to planting it in cotton. Maloy did this, planted it in cotton and intensively cultivated the crop. The first year's cultivation (1946) yielded such return that Wagner's crop rental, proceeds from one-fourth of the crop, amounted to about $800.00.

Wagner collected the rent for the first year at Maloy's home. At that time he passed by the land twice and had opportunities to observe that the purpose for which he placed Maloy in possession, to increase the land's productivity by proper tenancy, was being carried forward. The next year Maloy disced the land as before, and went further, leveling it thoroughly, *by the use of tractors and scrapers,* and again planted it in cotton.

About six and a half acres of low, floodable land and high land, on the tract, were reclaimed so as to make the entire tract readily irrigable. Prior to leveling, a part of this six and a half acres was so high it could not be irrigated and the remainder was so low that water would stand on it and ruin any crop planted there. It was necessary, in order to make the entire acreage effectively level to move four or five inches of dirt by the use of tractors and scrapers onto several of the lower acres in the southwest corner of the tract, and for another acre and a half, including a small strip near the southeast corner to be leveled in the same way. The entire acreage was thus made readily irrigable, so that, at a cost to Maloy of about $1,000.00, water could be gotten over the entire forty acres in half a day. During the second year of the agreed term (1947) Maloy planted only cotton, and that year Wagner's rental share was about $1,300.00. Following the above mentioned leveling work, the land for the first time was suited for growing fall vegetable crops. Maloy had prepared the land for planting such a crop

of vegetables when A. B. DeKock and his wife, to whom the land was transferred by Wagner, entered and ousted him from possession before that crop could be planted. It was then that Maloy filed this suit.

The writ was granted on two points of alleged error on the part of the Court of Civil Appeals in holding, first, that there is no evidence to sustain the findings of the trial court that the facts are such as rendered the oral contract immune to the operation of the statute of frauds; second, and more specifically, that there is no evidence to show that Wagner had such knowledge of the making of a valuable and permanent improvement to the land as to amount to an acquiescence therein. The two points present for our decision the question of whether, under the facts established at the hearing of the case on its merits, the trial court's action in ordering and decreeing enforcement of the contract should be sustained. The following excerpt from the trial court's judgment brings before us succinctly the essential matters bearing on the question:

"* * * on or about the 15th day of August, 1945, the defendant, John D. Wagner, as landlord, entered into a verbal agreement with the plaintiff, Dan Maloy, as tenant, under the terms of which the said defendant, John D. Wagner, did lease unto the plaintiff, Dan Maloy, for general farming purposes the following described tract of land in Hidalgo County * * * (describing it), for *a period of three years beginning with September 1, 1945, and ending with August 31, 1948;* that said plaintiff was to pay said defendant as rental one-fourth of the proceeds of the crops produced on said land *during said period of time;* that the defendant, *John D. Wagner, did place plaintiff, Dan Maloy, in possession* * * * *about September 1, 1945,* and that plaintiff, * * * continued in possession * * *, and did fully perform all the terms of said lease imposed on him; that he was wrongfully ousted from possession of said land by the defendants, A. B. DeKock and Mrs. A. B. DeKock; * * * *claiming as grantees of the defendant, John D. Wagner, with notice of plaintiff's rights;* and the Court further finds * * * that said verbal contract for the lease of said land is a present, existing, valid and binding contract between the parties, and * * * that *all matters of fact as well as of law are with the plaintiff* and that he is entitled to recover all the relief prayed for in his petition of and from and against said defendants, and each of them." (Emphasis added).

The Court of Civil Appeals correctly says with respect to the trial court's judgment:

"In view of the trial court's findings, we must here presume that the three-year lease contract was entered into by the parties, that pursuant to such contract Maloy entered into possession of the land and fully paid the agreed rent for two years, * * *."

The Court of Civil Appeals also recognizes in its opinion as an established fact *that Maloy made improvements to the land which were of a permanent nature.* The opinion expresses a view in this connection, however, with which we are unable to agree—that the evidence shows Maloy made the permanent improvements without the consent or knowledge of Wagner. The opinion contains a further statement, which is immaterial in our view of the case, that "Maloy had a nice profit from the land even after deducting the $1,000.00 for permanent improvements."

In its opinion on motion for rehearing the Court decided the case on its view that Maloy failed to show "that there were reasons why it would be a fraud upon him not to enforce this otherwise unenforceable contract," particularly in that he failed to prove there was no *net profit* on the contract.

The Court of Civil Appeals incorporated in its opinion the rule as stated in Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114, 15 A. L. R. 216, and retained therein the alternative stipulation in regard to fraud. This Court incorporated in its opinion in that case the alternative stipulation because it was applicable under the facts of that case. Under the facts there presented there was neither possession by the transferee, administrator of the estate of Davis, and his heirs at law, nor valuable improvements made to the land.

■ Since the rule as promulgated for this Court by Chief Justice Phillips in the Bridgewater case is now firmly established, it is set out herein. Its statement, which is controlling here, omits the alternative stipulation, since Maloy, the transferee, made valuable improvements to the land with Wagner's acquiescence. Stated to fit the present facts the rule promulgated by this Court in the Bridgewater case, is as follows:

"* * * that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. *The making by the vendee of valuable and permanent improvements upon* the land with

the consent of the vendor; * * * Each of these three elements is indispensable and they must all exist." (Emphasis added).

The late Chief Justice Alexander recently stated the rule for this Court in Jones et al v. Mawman et al, 145 Texas 596, 200 S. W. (2d) 819, omitting, since it was not applicable in that case, the alternative stipulation referred to, citing, among other authorities, Hooks v. Bridgewater. The rule as stated and applied in the Mawman case is as follows:

"It appears to be well settled, that an oral agreement for the sale and transfer of land is enforcible in spite of the statute of frauds if the purchaser has paid the consideration, taken possession, and made valuable permanent improvements on the land *in reliance thereon.*" (Emphasis added.)

The factual pattern of the Bridgewater case and the principal question there decided, are clearly disclosed by the present Chief Justice (then a member of the Commission of Appeals) in an oppinion written by him and adopted by this Court, in Upson v. Fitzgerald, 129 Texas 211, 103 S. W. (2d) 147, as follows:

*"The principal question decided in the case of Hooks v. Bridgewater was whether the performance of the contract there under review by the plaintiff rendered it enforceable in equity, notwithstanding the statute.* In that case a father agreed to resign the custody of his 7-year-old son to an unmarried man who agreed to bring up the child and educate him as his son and leave him his entire estate at his death. From that time the child lived with the unmarried man in his home as his son, but upon the death of the unmarried man no will was discovered. *The contest was between the child, for whose benefit the contract was made, and who had then grown to maturity, and the heir at law of the deceased single man.* This Court held in a notable opinion by Chief Justice Phillips that such facts did not present a situation where it would work a positive fraud upon the boy to enforce the statute, he having not been *put in adverse possession of the land and having not made valuable permanent improvements thereon."* (Emphasis added.)

■ It is pointed out by this Court in the still more recent case, Chevalier v. Lane's Inc., 147 Texas 106, 213 S. W. (2d) 530, pp. 533-4, written by Justice Garwood, that while the statute declares a policy that parol testimony is too unreliable for proof of certain types of agreements and the courts must give heed to that policy, *it must give heed also to considerations of an*

*equitable character* when the facts warrant, as for instance, when every act of plaintiff may be explained apart from the oral contract in question, and none of his acts are explainable apart from it. In other words, what is done by the parties must supply the key to what is promised. See in this connection the Bridgewater case, 111 Texas 122, 229 S. W. 1114, at p. 1117, particularly the following statement:

"But where there is payment of the consideration, the surrender of possession and the making of valuable and permanent improvements on the faith of the purchase with the owner's knowledge or consent, *there is created an estoppel against him and it may fairly be said that a fraud upon the purchaser would result if the owner were permitted to repudiate the contract.*" (Emphasis added.)

It appears from the facts of the present case that an estoppel was created against defendants, and that a fraud upon Maloy would result if Wagner were permitted to repudiate the contract; and we so hold, in line with the pronouncements of the cases above quoted and discussed. Ward v. Etier, 113 Texas 83, 251 S. W. 1028; Ponce v. McWhorter, 50 Texas 562; Ann. Berta Lodge v. Leverton, 42 Texas 18; Ottenhouse v. Burleson, Adm'r., 11 Texas 87. The three early cases just cited are to the effect that where possession was had with the acquiescence or consent of the transferor it was not necessary, in order not to come within the statute of frauds, for the transferee to allege and prove that the improvements were made with the acquiescence or consent of the transferor. The cases in which the courts have held that the improvements must be made with the knowledge or acquiescence of the transferor at the time they are being made, in order to avoid the statute, have been those in which the transferee either took possession without the knowledge or consent of the transferor, or against his wishes, or made the improvements after the lessor had repudiated the contract. See 101 A. L. R. 923, at p. 1067. The vendees, or lessees, were not placed in possession, as Maloy was, before the improvements were made. To hold, as contended for by Wagner, that it was necessary for Maloy, in order to avoid coming within the statute of frauds, to show that Wagner consented to the improvements as they were being made, would be to ignore the facts and circumstances surrounding the contract at its inception. It is well to add, in order that the scope of the holdings herein may not be misunderstood, that in those cases in which the lessee has been placed in possession and valuable improvements have been made and rentals paid by him, a

remedy at law for recovery of payments made and damages would not be adequate in that it would be difficult or impossible to restore him to his position. Ponce v. McWhorter, 50 Texas, 562.

■ The present case fits closely into the factual pattern of Ward v. Etier. Etier, a lessee under a two-year oral lease of a garage business conducted by a third person in the lower floor of a building owned by Ward, instituted suit for specific performance of the oral lease agreement in which Ward and the third person simultaneously agreed with Etier. The agreement of Ward to purchase the garage business was not closed until the third person and Etier went to Ward, and Etier in the company of the three told Ward that the deal depended on his giving Etier a lease for two years. Ward agreed to give the lease, told Etier to close the deal and take possession. Ward, according to the jury's finding, so agreed and told Etier to close the trade and take possession of the garage premises as lessee. Etier took possession, made valuable improvements to the furniture and fixtures necessary for the profitable management of the garage at an expense of some $600.00, but added nothing to the permanent value of the premises except for use for a garage business. Etier took possession in reliance on and in furtherance of the oral lease, and paid rent for six months. *Ward had no knowledge that the improvements were being placed on the premises before such work was completed.*

Another feature of similarity between the present case and the Etier case, and which is not present in the Bridgewater case, is the fact that the transferor, Ward, and lessee, Etier, in that case, and transferor, Wagner, and lessee, Maloy, in the present case, were available as witnesses. While not decisive, this feature constitutes a marked difference between the pattern of the Bridgewater case on one hand, and the Etier case and present case on the other hand.

This Court held that the parol lease was enforceable in the Etier case, saying:

"Ward's refusal to carry out his agreement to lease the building for a term of two years and Etier's payment of 'some twelve or fourteen hundred dollars more than the property was worth disconnected from the garage as a going concern' and the making of improvements as stated in question No. 2, all in reliance upon the composite contract made among the three men, and not in reliance upon an independent and separate contract from

that in which the payment was made, was such fraud upon Etier as was connected directly with the contract, arose out of it, and was strictly referable to it, and was therefore sufficient when added to payment of rents and possession by the lessee to relieve the lease feature of the contract from the effect of the statute of frauds," citing among other cases Ann Berta Lodge v. Leverton, 42 Texas 18, and Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114.

The Etier case was one on certification of three questions, No. 2 being as follows:

"Did the purchase by the appellee, in reliance upon and in performance of the parol lease, of the property, paying therefor much more than its real value, disconnected from the business as a going concern, with knowledge on the part of appellants that the purchase was made in reliance on the performance by appellants of the lease; making valuable improvements to the furniture and fixtures necessary for the profitable management of the garage, some of which were cemented in the sidewalk, and some attached to the building, but adding nothing to the permanent value of the premises except for use as a garage, create such equities, in connection with possession of the premises given by appellants and the acceptance of six months rent, as entitle appellee to specific performance of the varbal lease?"

In view of the affirmative answer to the foregoing question, which is decisive of the present case, it is unnecessary to discuss the other two questions.

It is not incumbent, in the light of the facts of the present case, to show, under the above quoted rule, either that it would be a fraud upon Maloy not to enforce the contract, or that there were no net profits.

The judgment of the Court of Civil Appeals is reversed and set aside, and the judgment of the trial court stipulating "that all matters of fact as well as of law are with the plaintiff and that he is entitled to recover all the relief prayed for * * * against said defendants, and each of them," is affirmed. It is so ordered.

Opinion delivered February 2, 1949.

Rehearing overruled March 9, 1949.