Lillie CLIFTON (Gurley), Appellant,

v.

Ray OGLE, Appellee.

No. 17637.

Court of Civil Appeals of Texas, Fort Worth.

June 27, 1975.

Rehearing Denied Sept. 5, 1975.

McCulloch, Ray, Trotti, Hemphill & Meadows, and Ross H. Hemphill, Dallas, for appellant.

Jennings, Montgomery & Dies, and Elton M. Montgomery, Graham, for appellee.

OPINION

MASSEY, Chief Justice.

The instant appeal is from a judgment for the defendant rendered following jury trial of a suit to compel transfer of legal title to land, to impress a constructive trust thereon, etc.

We affirm the judgment.

In view of the somewhat complicated discussion to follow we deem it advisable to show initially that it is our holding that the plaintiff's claim is defeated by the defendant's plea of limitation; but furthermore that in any event plaintiff's claim was not shown as one enforceable even had her suit been timely filed. Also, we hold that there was no procedural reversible error.

Legal title to a 75 acre tract of land had at all material times been vested in defend-ant Ray Ogle. Further, at all material times plaintiff Lillie Clifton was the moth-er-in-law of Ogle, between whom there was existent love and affection until September, 1968.

On January 20, 1965, Ogle orally agreed to convey the 75 acres to Mrs. Clifton if she would agree to pay the taxes accrued and to accrue thereon and pay off the balance owing by Ogle on a note secured by ven-dor's lien on the land. Mrs. Clifton did agree, did pay off the note, and did pay the taxes owing and also those which later be-came due.

Ogle never demanded anything of Mrs. Clifton prior to suit, and even then did not demand anything of her, other than by his cross-action praying for removal of the cloud cast upon his title to the land by the claim of Mrs. Clifton. He did allege in his pleadings that the value of the rental of the land during the period of Mrs. Clifton's use and possession exceeded the amount of ex-penditure by her, though unaccompanied by any claim for relief or credit of any kind because thereof.

In September, 1968, there occurred a "family fight". As result thereof Ogle and Mrs. Clifton became somewhat estranged. By one of the special issues the jury found that after such time the love and affection theretofore existing between the parties ceased. No complaint of the finding is made on the appeal, Mrs. Clifton merely asserting that the finding was immaterial.

Later, in September of 1969, Mrs. Clifton had a deed to the property prepared for signature by Ogle. The attorney who pre-pared it mailed it to Ogle for execution. Ogle kept the deed, but did not sign it.

On trial, which began August 26, 1974, Mrs. Clifton testified that ". . . at least six years (prior), I guess, five or six, something like that" she had talked to Ogle about executing a deed to the property. Ogle stated to her that he did not have time to go up to the lawyer's office and sign a deed, but that he would be "off" in a few days and would "come up and fix them".

Six years prior to the occasion would mean August of 1968; five years prior would mean August, 1969. Both dates would be more than four years prior to March 11, 1974, when Mrs. Clifton filed her suit.

By the pleadings upon which she went to trial Mrs. Clifton's prayer was that (1) Ogle be required to make specific performance by making transfer of title to the land; and, in the alternative, that (2) the court impress for her a constructive trust on the 75 acres; and, in the alternative, that (3) she have judgment to recover from Ogle the sum of $5,000.00 alleged to have been expended by her in paying off the note secured by vendor's lien on the property, and the past due and subsequently accruing taxes thereon. By anticipation that Ogle would plead the defense of the statute of frauds Mrs. Clifton inserted in her pleadings the claim that Ogle be prohibited from relying upon the statute under the doctrine of promissory estoppel.

With respect to numbers (1) and (2) Ogle plead the statute of frauds, and also limitations statutes; and with respect to number (3) Ogle plead limitations statutes. Specifically, Ogle plead as defenses Vernon's Ann. Tex.Civ.St. Art. 1288, "Instrument of conveyance"; Texas Business and Commerce Code, Chapter 26, "Statute of Frauds", Sec. 26.01, "Promise or Agreement Must be In Writing", a four-year statute; V.A.T.S. Art. 5531, "(Limitation of time within which suit must be brought)—Actions for specific performance"; V.A.T.S. Art. 5526, "Actions to be commenced in two years"; and Art. 5527, "What actions barred in four years". By way of cross-action Ogle sought judgment quieting title to the 75 acres.

Not having the anticipatory pleading therefor in her original petition Mrs. Clifton, by supplemental petition, plead affirmatively to Ogle's limitations pleas by averring facts purporting to raise the doctrine of promissory estoppel with reference thereto so as to prohibit Ogle from relying upon limitations as a defense.

At this point we take occasion to notice that in view of the posture of the parties on the appeal we disregard any question of the propriety of the two-year statute of limitation having application, and in disregard of such consider as applicable one of the four-year statutes of limitation as having application, in part at least, to Mrs. Clifton's suit. It was a four-year statute which was used by the court, and if limitation of the nature contemplated by either of them should in any event be applied at all in this case we may treat as proper a four-year statute.

By the judgment of the court Mrs. Clifton was granted a personal judgment against Ogle for $170.11, being the amount she proved that she paid in ad valorem taxes on the property during the four-year period immediately prior to March 11, 1974, the date on which she filed her suit. Ogle makes no complaint of the judgment against him in this respect. Mrs. Clifton complains because the judgment should in any event have been for the total amount she had paid since January 20, 1965, both on taxes on the property and to pay off the previously mentioned indebtedness of Ogle.

■ With reference to the right of Mrs. Clifton to enforcement of specific performance of promise to convey the land despite the plea of the statute of frauds in resistance, the law as exemplified by the leading case of *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216 (1921) is controlling. Therein it was held that to relieve a parol transfer of land from the operation of the statute of frauds three things were necessary: (1) payment of the consideration; (2) possession by the vendee; and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, *the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.* The italicized phrase noted is explained in the case of *Maloy v. Wagner*, 147 Tex. 486, 217 S.W.2d 667, 671 (1949) where it is shown that unless the plaintiff has been put in

adverse possession of the land and unless he has made valuable permanent improvements thereon in reliance upon the parol sale there would not be existent facts as would make the transaction a fraud upon the purchaser if it were not enforced.

■ Therefore, in the instant case, since Mrs. Clifton did not make valuable permanent improvements upon the subject property there would not be any facts which would make the transaction a fraud upon her if not enforced, even though she did enter into adverse possession of the land in reliance upon the transfer in parol. Mrs. Clifton did not ask for an issue on valuable permanent improvements. No such issue was submitted in the court's charge. The evidence wholly fails to show any issue to have been raised. Maintenance of fences or "use and enjoyment" by grazing livestock on the land enclosed thereby do not suffice to discharge a plaintiff's burden in such a case.

■ At the place in this opinion where we consider Mrs. Clifton's attempted assertion of the defense of promissory estoppel as applied to Ogle's pleas of limitation we write more exhaustively upon the doctrine. Reference thereto should be made in a study of applicability of the doctrine to Ogle's defense of the statute of frauds. However, suffice it be to say at this point that by *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex. Sup., 1972) the doctrine of promissory estoppel may be properly applied to a situation to prevent the defense of the statute of frauds *only* in the event the statute itself would otherwise operate to defraud. Here such is not the case. Here there has not been shown such a change of position by Mrs. Clifton that the parties could not be put in the same relative position they would have enjoyed but for the contention. Here the requirements of law are satisfied by the rule of law of *Hooks v. Bridgewater,* supra, and *Maloy v. Wagner,* supra, and there is no occasion to test this part of the case by *"Moore" Burger.*

We will now consider Mrs. Clifton's contention that she is entitled, under the circumstances, to have a constructive trust impressed on the land.

■ A constructive trust is imposed not because of the intention of the parties but because the person holding the title to the property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. Restatement of the Law, Restitution, Sec. 160, "Constructive Trust". In one of the succeeding sections, Sec. 164, "Conveyance Ineffective Because of Mistake", is treated the analogous situation to those considered in *Hooks v. Bridgewater,* supra, and *Maloy v. Wagner,* supra. There it is stated that unless it be shown that the donee/transferee enters into possession of the land and makes valuable improvements thereon there may not be enforcement of an oral promise to convey, and that the intended donee/transferee is not entitled to maintain his possession under the theory of constructive trust. A constructive trust does not arise because the donor/transferor is not unjustly enriched because of his retention of the legal title to the property.

■ Furthermore, for a constructive trust to become existent there must have been fraud at the material time upon which one in possession of the title to property taken or begins to hold it in trust as a completed transaction proper to be enforced. However, it has been held the mere failure to discharge a promise of something to be done in the future is not fraud. Where that is the condition obtaining fraud, as an essential element to the creation of a constructive trust, is wanting and there may not be enforcement of the promise under the theory that a constructive trust is existent. *Talley v. Howsley*, 142 Tex. 81, 176 S.W.2d 158 (1943). Undoubtedly this is the law in the event the promise, when made, was intended to be kept. See 25 Tex.Jur.2d, p. 684, "Fraud and Deceit", Sec. 45, "—Made with intent not to carry out". Here there is no doubt that when Ogle

made the promise to convey in 1965 he did then intend to perform; that there was no secret and fraudulent intent on his part not to perform as promised.

We will now consider matters concerning the propriety of Ogle's pleas of limitations.

In an answer to a special issue the jury found that following date of September, 1968 (when the "family fight" occurred) Mrs. Clifton knew or should have known that Ogle "probably intended not to furnish her a deed to the 75-acre tract". By points of error attack is made upon the issue and answer as not supported by evidence or not by sufficient evidence, and that the jury finding was contrary to the great weight and preponderance of the evidence. We overrule the points of error upon examination of the state of the evidence in the whole record.

What is of concern is the entitlement, if any, of Mrs. Clifton to recover her expenditures prior to March 11, 1970 (suit having been filed March 11, 1974). It was prior thereto that she paid taxes and indebtedness which was not reimbursed pursuant to the judgment in her favor for the amount of taxes she paid after March 11, 1970.

It is to be remembered that by the aforementioned jury finding relating to "when" Mrs. Clifton was "on notice" that Ogle probably no longer intended to abide by his promise to convey the 75 acre tract of land in question she began to "sleep on her right to bring suit". This was September, 1968. By the jury finding, which we hold to have been supported by the evidence, Mrs. Clifton delayed at her peril in taking steps to enforce the right to which she believed herself entitled. In short, the period for purposes of any applicable statute of limitation then "began to run".

Such applied not only to Mrs. Clifton's right to seek reimbursement of money she paid out, and which enured to the benefit of Ogle, but likewise to her right to seek specific enforcement of Ogle's promise to convey the property to her by deed, and/or to seek to have a constructive trust impressed upon the property.

But Mrs. Clifton's claim is that under the doctrine of promissory estoppel, raised by her as an affirmative defense to Ogle's pleas of limitation, Ogle should be denied any right to insist upon such pleas. We have already written upon Mrs. Clifton's claim by the doctrine of promissory estoppel that Ogle had not the entitlement to use the defense of the statute of frauds to defeat her claim for specific performance or to have impressed a constructive trust upon the land. We made reference at that point of the opinion to what is written at this point, for what is here written has like application, and, hopefully, will enable better understanding of the doctrine of promissory estoppel and of when and under what circumstances it may be used by a plaintiff, and the burden to be discharged by the plaintiff if he hopes to profit thereby.

Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts. 31 C.J.S. Estoppel § 59, p. 367, "What Constitutes", sub. a., "In General". The office of equitable estoppel is to protect an injured party from a loss which, but for the estoppel, he could not escape, and estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of estoppel had never existed. It is not a cause of action and does not give or create one. Thus it is usually useful only as against a defense pleaded by the adverse party. 31 C.J.S. Estoppel § 63, p. 397, "Ob-

ject and Purpose of Doctrine". There can be no estoppel where the party claiming it had notice or knowledge of the facts. One relying on an estoppel must have exercised reasonable diligence to acquire knowledge of the real facts as the circumstances of the case might require. If he conducts himself with a careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss he cannot invoke the doctrine of estoppel. 31 C.J.S. Estoppel § 71, p. 435, "Reliance on Representation". See also *Neal v. Pickett*, 280 S.W. 748 (Tex.Com.App., 1926).

Most appropriate to promissory estoppel is 31 C.J.S. Estoppel § 78, p. 456, "Representations", under which it is pointed out that a representation generally gives rise to an estoppel when it is false and is knowingly or negligently made by one person to another ignorant of the facts with the intention that such other act thereon and such other does reasonably rely and act thereon to his prejudice. Further, at p. 466, Sec. 80, "(Representations)—As to Future Events", it is stated that for future promises to be enforced or permitted to operate as a basis for equitable estoppel it must be because of circumstances where to do otherwise would help perpetuate a fraud or cause injustice in a case in which the representation or promise has been made to induce action or is reasonably calculated to induce action and has in fact induced action on the part of the party setting up the estoppel, in other words, if injustice can be avoided only by enforcement of the promise. The difference of promissory estoppel from ordinary equitable estoppel is that the representation is promissory rather than as to an existing fact. To invoke the doctrine of promissory estoppel, an actual promise must have been made and all of the other elements of estoppel, such as justified reliance, etc., must have been present.

In the case before us there is no question but that on January 20, 1965, Ogle promised to convey the subject property to Mrs. Clifton. However, the jury found from a preponderance of the evidence that since that date Ogle had not "on more than one occasion made promises to Lillie Clifton that he would convey said 75-acre tract to her". The jury also found that the love and affection that Ogle and Lillie Clifton held for each other in 1965 "no longer existed after the early part of 1968". As previously observed the jury also found that in September, 1968, Mrs. Clifton knew, or should have known, that Ogle probably did not intend to furnish her a deed.

The issues above noticed apparently were issues of the defendant Ogle; certainly they did not present for jury findings in behalf of Mrs. Clifton that there was any particular occasion other than those in January of 1965 when Ogle promised a deed to her; that in reliance thereon Mrs. Clifton took no action to obtain such deed; that failure to take action to obtain a deed was in justified reliance upon the promise, etc. There was complete want of any special issue useful to Mrs. Clifton, either offensively or defensively, as applied to Ogle's pleas of limitation. That being so Mrs. Clifton has not established her estoppel defense even if it might be properly said that she otherwise might have been enabled to do so. 22 Tex. Jur.2d, p. 692, "Estoppel", Sec. 21, "Burden of proof".

In the celebrated case of *"Moore" Burger, Inc. v. Phillips Petroleum Company*, supra, the plaintiff sought use of a promissory estoppel plea to avoid the statute of frauds. As considered at this stage of the instant opinion Mrs. Clifton does not seek to use her promissory estoppel plea to avoid the statute of frauds, but to avoid the limitation pleas presented by Ogle. We earlier wrote upon the like attempt of Mrs. Clifton to use the doctrine to defeat Ogle's plea of the statute of frauds. Here Mrs. Clifton is in the position where she is saying "yes, statutes of limitation would appear to apply to all or part of my claim, but Ogle should not be permitted to plead and rely upon them because he is estopped from so doing."

In *"Moore" Burger* the doctrine of promissory estoppel was successfully used against the statute of frauds because the statute, itself, would otherwise operate to defraud the plaintiff. That was stated to be the requirement, and in that case it was demonstrated that by the factual circumstances the requirement was satisfied. But in this case we hold that it cannot be used to defeat Ogle's pleas of limitation. Here it is not made to appear that any statute of limitation would, itself, operate to defraud if the doctrine of promissory estoppel be not honored.

It would be extremely difficult to hypothesize a situation in which the observance and application of one of the Texas statutes of limitation would, in and of itself, operate to defraud one of his right to maintain a suit. All of them are "statutes of repose", applicable only to eliminate a remedy which for the purpose is deemed to have been existent at a time beyond the period of limitation therein prescribed. Each of them prescribes a period within which a plaintiff must confine his claim of right and obtain its enforcement in the event the defendant sets up the limitation defense as applied to any portion of the claim beyond the limitation period. In any event Mrs. Clifton has not shown any reason why the doctrine of promissory estoppel might be applied in the instant case to prohibit Ogle's reliance thereon.

We have severally considered and we overrule each of Mrs. Clifton's points of error.

Judgment is affirmed.