**EXXON COMPANY, U.S.A., A DIVISION OF EXXON CORPORATION, Plaintiff–Appellee, Cross–Appellant,**

v.

**BANQUE de PARIS et des PAYS–BAS, Defendant–Appellant, Cross–Appellee.**

No. 87–2007.

United States Court of Appeals, Fifth Circuit.

March 27, 1989.

Hayden Burns, Constance Barnes, Butler & Binnion, Houston Tex., for defendant-appellant cross-appellee.

Stanley Godofsky, Donald F. Luke, Kenneth Lehr Miller, Rogers & Wells, New York City, Michael F. Crotty, Associate General Counsel, American Bankers Ass'n, Washington, D.C., for amicus, American Bankers Ass'n.

Rufus Wallingford, Tom A. Cunningham, Fulbright & Jaworski, Houston, Tex., Keith A. Jones, Fulbright & Jaworski, Washington, D.C., for plaintiff-appellee cross appellant.

Before RUBIN, GARZA, and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

On remand, the Supreme Court of the United States has directed us to consider *Kerr Construction Co. v. Plains National Bank*[1] and, taking that decision into account, to reconsider our prior opinion.[2] Because these cases raise an important issue of Texas state law left unsettled by *Kerr*, a case which may or may not control the outcome of *Exxon*, we, as a court exercising diversity jurisdiction, have decided to certify the decisive question in this case to the Supreme Court of Texas.

I.

In *Exxon*, we held that a bank's obligations under a letter of credit issued in

---

1. 753 S.W.2d 181 (Tex.App.—Amarillo 1987, writ denied).

2. *Exxon Co. v. Banque de Paris et des Pays–Bas*, 828 F.2d 1121 (5th Cir.1987).

good faith terminate on the date of expiration specified in the letter even when that date precedes the date on which the underlying contract will be completed. The underlying contract in *Exxon* consisted of an agreement by Houston Oil & Refining to deliver to Exxon 558,000 barrels of crude oil "during September through December 1981." To guarantee its performance, Houston obtained a letter of credit from Banque de Paris payable upon Exxon's presentation of enumerated documents, including certification that Houston "has failed to deliver to Exxon ... 558,000 barrels ... between September and December, 1981." The letter of credit set October 31, 1981 as its expiry date. Exxon could have insisted on amendments to the letter if it found any provisions unacceptable, but it did not do so. The record reveals that all parties understood that the expiry date occurred before the end of the term in which Houston could satisfy its underlying contractual obligations to Exxon.

We determined that the letter of credit issued by Banque de Paris to Exxon contained no ambiguity; "[t]he expiry date in the letter of credit is as certain as words permit." [3] Because "[t]he length of time that an issuer remains liable for a failure to perform by its customer is ... a matter of critical importance to the issuing bank, to the customer who must pay for the credit, and to the regulatory authorities," the "need for a precise expiration date is particularly acute when a standby letter of credit is issued." [4] We, therefore, held that the letter "required no construction and that it terminated on its express expiry date." [5]

As a federal court sitting only by virtue of diversity jurisdiction, we are bound to follow Texas law in this case. After we had decided *Exxon*, the Court of Appeals for the Seventh District of Texas published *Kerr*, a case addressing a "single issue": the "due date of [a] letter of credit." [6] The letter of credit at issue in *Kerr*, dated September 17, 1984, "authorize[d]" its beneficiary "to draw" on the creditor bank if Kerr Construction "has defaulted or failed within ten (10) months to complete" its underlying contractual obligations. The letter of credit stipulated that it "shall be extended without amendment for an additional period of six (6) months from the expiration date hereof unless thirty (30) days prior to such expiration date" the bank elects not to renew it. The letter concluded: "[Y]our drafts ... will be duly honored if presented to us on or before January 1, 1985 ..."

The Texas intermediate appellate court found that "[t]he contract remained uncompleted on 17 July 1985, ten months after the date of the letter[,]" and that the "initial due date" of January 1 "was automatically extended until 1 July 1985." [7] In an opinion that initially remained unpublished, the court determined that "there is an irreconcilable conflict" between the "condition precedent to the Bank's liability"—the date of completion of the underlying contract, and the extended July 1 due date.[8] Because the court found the underlying contract "the most significant and essential provision in the [letter of credit] agreement," [9] it held that the beneficiary of the letter of credit could draft against that letter until the date specified for performance of the underlying contract even though that date extended beyond the expiry date.

The Supreme Court of Texas denied Kerr's application for appeal with the notation "Writ Denied," and refused to publish the appellate court's opinion. The Seventh

---

3. *Id.* at 1125.

4. *Ibid.*

5. *Id.* at 1126.

6. *Kerr,* 753 S.W.2d at 183.

7. *Ibid.*

8. *Id.* at 184.

9. *Ibid.*

District Court subsequently published *Kerr.*

## II.

Before determining the applicability of *Kerr* to the facts presented in *Exxon,* we must first decide the status of the *Kerr* opinion as a correct exposition of Texas state law. The parties differ with respect to the meaning this court should give to the *Kerr* opinion, considering the manner in which the Texas Supreme Court phrased its denial of writ in that case.

Under Rule 133 of the Texas Rules of Appellate Procedure, the State Supreme Court may decline to hear a case in one of two ways: the court may "refuse" the writ, connoting that the "judgment of the court of appeals is correct and ... the principles of law declared in the opinion ... are correctly determined;" alternatively, the court may state "Writ Denied" to convey that it

> is not satisfied that the opinion of the court of appeals in all respects has correctly declared the law, but is of the opinion that the application presents no error of law which requires reversal or which is of such importance to the jurisprudence of the State as to require correction ...[10]

By denying, rather than refusing, the writ in *Kerr,* the Texas Supreme Court may have intimated that the appellate court's opinion contained an error of law. If this was the effect of the Texas court action, we are unable to detect what uncorrected error, if any, lurked in the Seventh District's opinion, and we are, therefore, unable to embrace its legal reasoning and conclusions as a correct enunciation of the single issue of state law with which it dealt.

It is possible that the Texas Supreme Court may have declined to correct the mistake in *Kerr* because the appellate court's unpublished decision did not affect the jurisprudence of the state since, under state law,[11] unpublished state court opinions cannot be "cited as authority by counsel or by a court." The Texas Supreme Court refused to publish *Kerr,* and the state appellate court published its opinion only after the State Supreme Court had denied Kerr a writ. Thus, it is not clear whether or not the Texas Supreme Court would consider *Kerr* a proper elaboration of Texas law on letters of credit. Were it to be confronted with the issue raised in *Kerr* in a later case important to the jurisprudence of the state, the Texas Supreme Court might grant review and correct whatever error it saw in *Kerr.* It is precisely this review of the issue raised by *Kerr* and its resulting guidance that we, as a court sitting in diversity jurisdiction, require.

On the other hand, it is possible that, as Exxon contends, the Texas Supreme Court intimated no adverse implication by its use of the phrase, "Writ Denied," and that the phrase connoted simply a refusal to review the opinion.

Even if that is the case, however, and even if *Kerr* correctly states Texas law, its applicability to *Exxon* is not clear. The letter of credit in *Exxon* unambiguously prescribed an absolute expiration date; the letter in *Kerr* provided that the "expiration date ... be [automatically] extended without amendment."[12] In *Exxon,* we found that the bank acted in good faith and fulfilled its obligations to all parties, that the beneficiary had opportunities to reform the letter of credit, and that each party knew that the expiration date preceded the date upon which the underlying contract could be satisfied; the *Kerr* court made no similar findings.

---

**10.** *See also* Texas Government Codes Ann. § 22.001(a)(6) (Vernon 1986).

**11.** Texas Rules of Appellate Procedure 90(i).

**12.** *Kerr,* 753 S.W.2d at 183.

Because we are unable to determine whether *Kerr* correctly states Texas state law, and if it does, how that decision affects the issues here presented, we believe it necessary to certify to the Supreme Court of Texas the following question:

> When a standby letter of credit, issued in good faith, contains an expiry date that precedes the date by which complete performance of the underlying contract might take place, and all parties agree specifically to that expiry date, when does the obligation of the issuing bank to honor its letter of credit terminate under Texas state law?

We disclaim any intention or desire that the Supreme Court of the State of Texas confine its reply to the precise form or scope of the question certified.

We direct counsel for the parties to confer as soon as practical and, within 15 days, to submit to this court a proposed agreed statement of the case and an agreed phrasing of the question or questions to be certified.[13] If the parties are unable to agree on either the statement of the case or the questions to be certified, the appellant will prepare a proposed statement of each, within 15 days, and within seven days thereafter, the appellee will prepare and file with this court its proposed objections and suggested changes to the appellant's suggestions.

GARZA, Circuit Judge, dissenting from the need to certify a question to the Supreme Court of Texas.

13. *See West v. Caterpillar Tractor Company, Inc.,* 504 F.2d 967 (5th Cir.1974); *Allen v. Estate of Carman,* 446 F.2d 1276 (5th Cir.1971).

1. Another, related, reason to resist the use of certification under these circumstances is the unnecessary delay that it causes in the resolution of a relatively simple case involving the enforcement of a letter of credit. The events giving rise to the cause of action here took place nearly nine years ago. The words of Justice

In my original dissent from the panel opinion I stated my conviction that the Texas District Court Judge had correctly applied Texas law. Subsequent to the original panel decision, the Texas Court of Appeals in Amarillo published *Kerr Construction Co. v. Plains National Bank,* cited at 753 S.W.2d 181 (Tex.App.—Amarillo, 1987, writ denied), a case that is virtually indistinguishable on the relevant facts from the case sub judice. Apparently the United States Supreme Court is convinced, as am I, that the *Kerr* case sets out the controlling law in Texas regarding the enforcement of letters of credit; that Court has directed us to reconsider our decision in *Exxon v. Banque de Paris et des Pays-Bas,* 828 F.2d 1121 (5th Cir.1987) in light of *Kerr.*

Nevertheless, my brothers from Louisiana and Mississippi continue to resist the application of controlling Texas precedent; they have proposed to certify the question presented in the case to the Supreme Court of Texas. Because I find such a certification unnecessary as well as contrary to the purposes behind the proper use of certification, I must once again dissent.

I would not bother the honorable members of the Supreme Court of Texas with certification of a question that has already been clearly answered by the Texas Court of Appeals at Amarillo. This is especially true since the Texas Supreme Court denied writ in the very case that answered the question presented for certification.[1]

Hale, of the Supreme Court of Washington, are particularly apropos to this case:

> If there ever was a way in which to delay a case as it moves slowly through the court, in my opinion, it would be the very procedure whereby at one stage the case comes to a halt in the federal system, moves over into the state system to await docketing, briefing, hearing, writing, filing of the opinion and petition for rehearing and then moves back into the system of origin to take its place on

The majority's decision to certify the question in this case places the Supreme Court of Texas in the position of having to distinguish the facts in the *Kerr* case from those in the case at bar. The task of distinguishing the facts in a case properly before us with the facts of every other case brought to our attention by the parties is *our* responsibility, not that of the Supreme Court of Texas. There is no principled distinction between the *Kerr* case and the case sub judice. But even if there were, it would constitute a misuse of the certification process to ask the Supreme Court of Texas to do for us what we should be doing for ourselves.

My colleagues continue to focus their attention on the expiry date of the letter of credit instead of focusing on the contract, the performance of which was to be guaranteed by the letter of credit.

I therefore dissent from the certification to the Supreme Court of Texas on the question presented in this case.

I attach to this dissent from the certification of the question as Exhibit A, the proposed opinion which I prepared upon the remand by the Supreme Court of the United States as a proper disposition of the case which my colleagues have rejected in favor of certification.

I have decided to present my Exhibit A to this dissent with the sole purpose of providing for the Supreme Court of Texas consideration of yet one more Texas judge's exposition regarding the controlling law in Texas on the question involved. I do not wish to imply in any manner what the

honorable members of the Supreme Court of Texas should do with the certification by our court. I just wanted to make available to the honorable members of the Supreme Court of Texas my personal views from the prior proceedings in our court regarding the proposed disposition of the question presented.

## EXHIBIT A

GARZA, Circuit Judge:

On remand from the United States Supreme Court, we have been directed to reconsider *Exxon Co. v. Banque de Paris et des Pays–Bas*, 828 F.2d 1121 (5th Cir. 1987) (*"Paribas I"*) in light of *Kerr Construction Co. v. Plains National Bank*, 753 S.W.2d 181 (Tex.App.–Amarillo 1987, writ denied). We conclude that the panel decision in *Paribas I* is in irreconcilable conflict with controlling Texas law as set out in the *Kerr Construction* case. For this reason, we withdraw our previous decision in *Paribas I* and affirm the decision of the U.S. District Court for the Southern District of Texas.

The facts in this case are fully set out in our prior panel opinion at 828 F.2d 1121, 1122–24. For the purpose of our reconsideration, it will be necessary to discuss several salient aspects of the underlying dispute.

In July 1981, Exxon Company contracted to deliver 558,000 barrels of crude oil to Houston Oil & Refining, Inc. in return for the delivery of an equal quantity of crude

the judicial conveyor for resumption of proceedings in the federal system.

*In re Elliot,* 446 P.2d 347, 371, 74 Wash.2d 600 (1968) (Hale, J., dissenting).

Considerations of judicial economy and the swift resolution of claims counsel against cavali-

er resort to the certification procedure even where there is some doubt as to the application of local law. But where controlling law in the jurisdiction of venue is clearly set out in the official reporters of that state, then certification should not merely be exercised with caution—it should not be exercised at all.

oil by Houston to Exxon "during September through December 1981." The contract required Houston to provide an irrevocable standby letter of credit to cover the value of the oil delivered by Exxon.

Houston then applied to the Banque de Paris et des Pays–Bas ("Paribas") for a letter of credit in the amount of $19,530,-000. As originally noted by the district court, two provisions of the letter of credit clash. The bank's obligation to pay Exxon arises, by the terms of the letter, upon the certification by Exxon that Houston failed to deliver the required volume of crude oil during the period between September and December 1981. The expiry date of the letter, however, requires that certification of non-delivery be made by October 31, 1981. Exxon learned in November that Houston was going to default. It presented certification of the default to Paribas on November 30, 1981, and again on December 1, 1981. Paribas rejected the certifications as untimely.

The district court found first that letters of credit under Texas law are subject to the same rules of construction that apply to ordinary contracts. It then ruled that "[a] construction in favor of Exxon is required by the rule that contracts must be construed to render performance possible." It found that the inconsistencies between the two provisions in the letter of credit rendered performance impossible. Had Exxon made a claim against the letter of credit before the expiry date of October 31, 1981, Paribas would have rejected it because Houston still had the months of November and December to deliver the required volume of crude. Yet, when Exxon presented a claim against the letter of credit after the expiry date, Paribas rejected it as untimely. Thus, from Exxon's perspective, the letter of credit was a nullity; performance was impossible. The district court therefore

granted summary judgment in favor of Exxon.

On appeal, a majority reversed. We found that the need for a stipulated expiry date is "particularly acute when a standby letter of credit is issued." *Paribas I,* 828 F.2d at 1125. We also found that Exxon should simply have rejected the letter of credit and refused to deliver the oil to Houston if it found the inconsistencies between the certification provision and the presentment clause unsatisfactory. Placing "paramount importance" upon certainty of result and practicality of performance, the majority held that the Paribas letter of credit "required no construction and that it terminated on its express expiry date." *Id.* at 1126. Upon reconsideration, we find that this ruling conflicts with the recent decision of the Court of Appeals of Texas in *Kerr Construction Co. v. Plains National Bank,* 753 S.W.2d 181 (Tex.App.–Amarillo 1987).[1]

In the *Kerr Construction* case, as in the case at bar, an irrevocable letter of credit was issued in which the certification provision conflicted with the expiration date. The bank in *Kerr Construction* had issued a letter of credit on September 17, 1984, which secured the obligation of one Cary L. Johnson to pay for certain paving work to be completed by Kerr Construction Company. The city of Lubbock, Texas was the beneficiary of the letter. The certification provision provided that the city's draft would be honored when accompanied by a signed statement from the mayor of Lubbock "that the contractor Kerr Construction Company has defaulted or failed within ten (10) months to complete" the required paving improvements. Thus, the bank's obligation to pay would arise ten months after the issuance date of the letter. That date was July 17, 1985. The

1. When the *Kerr Construction* case was first brought to our attention, it was an unpublished opinion of the Court of Appeals of Texas. Rule 90(i) of the Texas Rules of Appellate Procedure states: "Unpublished opinions shall not be cited as authority by counsel or by a court." *Kerr Construction* has since been published and we are now bound to apply it in the case before us.

ultimate expiration date of the letter of credit was July 1, 1985.

Kerr partially completed the paving job when Johnson began defaulting on payment. Kerr accordingly halted work on the project with the balance of the contract remaining unperformed. On July 17, 1985, the city drafted on the bank to pay the amount guaranteed in the letter of credit. The bank rejected the city's presentment as untimely since the stipulated expiration date had passed on July 1, 1985. Kerr Construction Company and the city sued to collect on the letter of credit. In its opinion, the Texas Court of Appeals stated that the single issue raised by the case was the due date of the letter of credit. It then proceeded to resolve the issue by construction of the document.

The court first noted that the certification clause "states the condition precedent to the Bank's liability and, as such, is the most significant and essential provision in the agreement." *Kerr Construction*, 753 S.W.2d at 184. It stated: "In the absence of a default or failure by Kerr Construction Company to complete the paving improvements within ten months from 17 September, 1984, there is no liability on the Bank." *Id.* The court then observed the rule, well-settled under Texas law, that "when there is an irreconcilable conflict between provisions in an agreement, the provision which contributes most essentially to the agreement is entitled to the most consideration." *Id.* [citations omitted]. In addition, the court noted the rule that "where there is an irreconcilable conflict between clauses or provisions in the contract, the expression in the clause or provision first appearing will control." *Id.* Under both rules, the court found the certification clause, rather than the expiration date, controlling as to the due date of the letter of credit. It

awarded Kerr Construction Company and the City of Lubbock the amount guaranteed by the letter of credit, pre- and post-judgment interest, as well as attorneys fees.

The *Kerr Construction* case is directly on point. In the case before us, as in *Kerr*, the expiration of the letter of credit pre-dates the occurrence of the conditions precedent to the bank's liability. In both cases, the certification clause is "the provision which contributes most essentially to the agreement." Likewise, in both cases, the certification provision is the expression that first appears in the document. Thus, in the case at bar, as in the *Kerr Construction* case, "the time stated in the [certification clause] prevails over the time stated in the [presentment clause.]" *Id.*

Accordingly, we withdraw our previous panel opinion in this case and AFFIRM the original district court decision. Exxon is entitled to judgment in the amount of $19,-530,000. We remand to the district court for calculation of pre-judgment interest from January 1, 1982, post-judgment interest, court costs, the costs of this appeal and attorneys' fees, if any, all of which are to be taxed against appellee Banque de Paris et Des Pays–Bas.