EXXON COMPANY, U.S.A., a DIVISION OF EXXON CORPORATION, Plaintiff–Appellee, Cross–Appellant,

v.

BANQUE DE PARIS ET DES PAYS–BAS, Defendant–Appellant, Cross–Appellee.

No. 87–2007.

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1989.
Order Denying Rehearing Feb. 8, 1990.

Hayden Burns, Constance Barnes, Butler & Binnion, Houston, Tex., for defendant-appellant, cross-appellee.

Michael F. Crotty, Associate Gen. Counsel, American Bankers Ass'n, Washington, D.C., Stanley Godofsky, Donald F. Luke, Kenneth Lehr Miller, Rogers & Wells, New York City, for amicus-American Bankers Ass'n.

Rufus Wallingford, Tom A. Cunningham, C. Mark Baker, Fulbright & Jaworski, Houston, Tex., Keith A. Jones, Fulbright & Jaworski, Washington, D.C., for plaintiff-appellee, cross-appellant.

ON REMAND FROM THE SUPREME
COURT OF THE UNITED STATES

Before RUBIN, GARZA, and JOLLY,
Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In a diversity action against a bank for refusing to honor a standby letter of credit, we held that the obligation of the issuing bank had terminated even though it might not have been possible for the holder of the letter to present the documents required for payment before the expiry date stated in the letter.[1] Thereafter, and before the issuance of our mandate, an intermediate state court of appeals rendered an unreported opinion interpreting the effect of such an impasse differently. On application for rehearing, we refused to consider this opinion as precedent. The state supreme court refused to authorize publication of the opinion, but the court of appeals did. Granting a writ, the Supreme Court remanded the case to us for reconsideration in the light of the published opinion. Concluding that the case before us is indistinguishable from the later state court decision, we hold that under state law the letter of credit had not expired when presented to the issuer.

I.

This tale has two chapters. Chapter I consists of the operative historical facts developed in the proceedings below. These are fully set forth in our first opinion, *Exxon I*[2], rendered on October 8, 1987. Chapter II is the extensive litigation history. On November 17, the Amarillo, Texas, Court of Appeals, rendered an unreported opinion in *Kerr Construction Co. v. Plains National Bank* that arguably indicated that a Texas court might reach a different result from that which we reached in *Exxon I*. The Texas Supreme Court denied a writ of review. Exxon sought rehearing, asking us to consider and follow *Kerr*, but, in *Exxon II*, we refused because under Texas law an unreported opinion is not precedential.[3] Exxon then applied to the Supreme Court for a writ. While the application was pending, the Texas Supreme Court denied a motion to publish *Kerr*, but the Amarillo Court of Appeals granted a similar motion, with the result that the opinion is now reported.[4]

The Supreme Court thereafter vacated our judgment and, in *Exxon III*, remanded the case "for further consideration in light of" *Kerr*.[5] Somewhat perplexed about the Texas Supreme Court's use of the term "writ denied," rather than "writ refused," in denying review of *Kerr* and considering the possibility that this phrase intimated that the *Kerr* opinion contained an error of law, we decided, in *Exxon IV*, to certify the question presented in this case to the Texas Supreme Court.[6] In *Exxon V*, after obtaining the parties' recommendations regarding the statement of the issue, we formulated the question as follows:

When a bank issues an irrevocable standby letter of credit that (i) contains a certification provision providing for payment to a beneficiary upon presentation of a signed statement certifying that the bank's customer did not perform an underlying obligation "between September and December, 1981," but (ii) also contains, in a subsequent paragraph, a presentation clause stating that such certification must be made "not later than October 31, 1981," when does the obligation of the issuing bank to honor its letter of credit terminate under Texas law?[7]

1.  828 F.2d 1121 (5th Cir.1987).

2.  Id.

3.  835 F.2d 1433 (5th Cir.1987).

4.  753 S.W.2d 181 (Tex.Ct.App.1987).

5.  —— U.S. ——, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988).

6.  867 F.2d 1524 (5th Cir.1989).

7.  874 F.2d 234, 236 (5th Cir.1989).

In *Exxon VI*, the state supreme court ordered that the question be "declined without answer" because the question "was dependent upon issues of fact."[8] With such assistance as may be derived from this Delphic refusal, we attempt to follow the Supreme Court's mandate.

## II.

■ A federal court sitting in diversity is bound to follow decisions of the state's intermediate appellate courts unless it is "convinced by other persuasive data that the highest court of the state would decide otherwise."[9] There is, therefore, a working presumption that state intermediate appellate court decisions represent accurate statements of state law.

The Bank of Paris (Paribas) contends that *Kerr* misstates Texas law, resting its argument upon three interdependent contentions. First, the state supreme court's denial of writs in *Kerr* intimates that the appellate court's legal analysis was deficient in one or more respects. This is so, Paribas argues, because the court's order denying the writ contained the phrase "writ denied," a phrase indicating that the court was "not satisfied that the opinion of the court of appeals in all respects has correctly declared the law."[10] Second, although the *Kerr* opinion was in fact belatedly published by order of the appellate court, the state supreme court has refused to order its publication. According to Paribas, the state supreme court's steadfast refusal to publish *Kerr* suggests that the court considered it "unworthy" to be precedential. As Paribas correctly notes, under

Texas law the state supreme court may decline to publish lower court opinions, and unpublished opinions have no precedential value.[11] Third, the *Kerr* decision is inconsistent with several state supreme court decisions concerning letters of credit.

These contentions fail to convince us that the Texas Supreme Court thinks *Kerr* is wrong. As we noted in *Exxon IV*, the first certification opinion, the implications of the state supreme court's "denial" of writs in *Kerr* are not clear.[12] The authorities cited do not persuade us that the court currently uses the notation "writ denied" only when it is dissatisfied with the appellate court's statement of the law. The Texas Supreme Court apparently uses this phrase also in those cases in which, for one reason or another, it chooses not to grant review.

Even if, however, we should conclude that the state supreme court was not "satisfied" that the Amarillo appellate court had correctly stated the law "in all respects" in its *Kerr* opinion, it is not clear what we should make of the court's dissatisfaction. That the supreme court was not "satisfied" might mean merely that it could not determine, without further study of the case, whether the lower court had in fact correctly stated the law.

The implications of the state supreme court's refusal to order publication of the appellate court opinion are even more indeterminate than are the implications of that court's "denial" of writs. Further, although Paribas argues that *Kerr* is incompatible with several cited Texas Supreme Court cases,[13] these cases bear only tangentially on the issue raised in *Kerr*. In-

8.  No. C–8684 (Tex. Sept. 20, 1989).

9.  *West v. AT & T*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

10.  Tex.R.App.P. 133(a) (West 1989).

11.  Tex.R.App.P. 90(i) (West 1989).

12.  867 F.2d 1524 (5th Cir.1989).

13.  *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653 (Tex.1987); *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537 (Tex.1987); *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378 (Tex.1985); *Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793 (Tex.1984); *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109 (Tex.1979).

deed, that issue truly seems to have been res nova.

The reasons that the Texas Supreme Court gave for refusing to accept certification of the question that we posed to it lends further support to the conclusion that *Kerr* is not to be disregarded. Were *Kerr* not authoritative, the resolution of this case would not turn solely upon "issues of fact."

For these reasons, we conclude that *Kerr* is binding on this court under the *Erie* rule.

### III.

■ Paribas also argues that even if *Kerr* is authoritative, there are significant differences between the facts in *Exxon* and those in *Kerr*. Certainly there are differences, but as every lawyer learns in his first semester of law school, precedential impact does not depend upon finding an identical, or to use the vernacular a "goose" or a "red pony," case.

With this in mind, we analyze the facts in *Kerr*. Cary Johnson, a subdivision developer, pursuant to an agreement with Kerr Construction, his paving contractor, obtained a letter of credit from Plains National Bank in favor of the City of Lubbock. The first paragraph of the letter authorized Lubbock to draw on the bank for Johnson's account if Kerr should "default[ ] or fail[ ] within ten (10) months to complete the paving improvements." Because the letter was issued on 9/17/84, this ten-month period would expire on 7/17/85. The last paragraph of the letter, however, indicated that the letter would expire on 1/1/85, although the letter further provided that the expiration date would automatically be extended for six months unless the bank notified the beneficiary otherwise. Because the bank did not give the beneficiary such notice, the final expiration date became 7/1/85. Later, Kerr Construction defaulted. Lubbock's effort to draw on the bank, which was made on 7/17/85, was rejected by the bank on the ground that the letter had expired on 7/1/85.

On appeal, the Amarillo Court of Appeals described the "single issue" before it in these terms: what was "the due date of the letter of credit." The court began its analysis of the problem by observing that the first and last paragraphs of the letter were in "irreconcilable conflict." Although the court did not explain the nature of this "conflict," it is not difficult to reconstruct what the court was intimating. The first paragraph made the bank's liability contingent on Lubbock's certification that Kerr had failed to complete its work by 7/17/89. Lubbock, of course, could not make this certification until this date had passed. The last paragraph, however, indicated that the bank's exposure was to end by 7/1/89. Thus, if both paragraphs were given effect, the bank could never become liable, something the parties presumably could not have intended.

Having established the existence of the irreconcilable conflict, the court then set about determining which provision should control. For this purpose, the court resorted to certain basic maxims designed to aid courts in construing contracts in general. First, the court noted the rule that when there is an irreconcilable conflict between different provisions of an instrument, the first should be given effect. Application of this rule to the facts of *Kerr*, the court concluded, would lead to the enforcement of the first paragraph. Second, the court cited the rule that, when different provisions of an agreement are in irreconcilable conflict, the provision that "contributes most essentially to the agreement is entitled to the most consideration." According to the court, the first paragraph, because it "state[d] the condition precedent to the Bank's liability," was the more essential and significant provision of the letter. For these reasons, the court concluded that the first paragraph controlled over the last and, therefore, that the bank remained liable under the letter at least through 7/17/85.

Several aspects of the *Kerr* decision are of particular significance. First, the court characterized the problem before it as one of contractual construction, a problem brought on by the presence in the agreement of mutually incompatible provisions concerning the time of performance. Sec-

ond, and more important, the court resolved its interpretive problem by applying several stock rules for the construction of contracts. Absent from the opinion is any discussion of the policies implicated by the alternative constructions of the contract, for example, the need of banks and other commercial lenders for fixed and certain expiration dates in standby letters of credit and other similar security instruments. Accordingly, there is no indication whatsoever that the appellate court concluded, as a matter of policy, that the interests of financial markets would be better served by placing the risk of ambiguity in letters of credit upon the issuers rather than upon the beneficiaries. Accordingly we too must resist the view of sound commercial policy on which we relied in part in *Exxon I.*

Reading *Kerr* in this fashion, we conclude that, contrary to what we may have said in *Exxon I,* this case does present a problem of general contractual construction rather than the narrower problem of construing a specific kind of security instrument. The provision in the letter fixing the timing of Exxon's certification of default by Houston (documents "certifying that Houston ... has failed to deliver ... between September and December") and the provision fixing the expiration date (October 31, 1981) are in "irreconcilable conflict," as that phrase was used by the *Kerr* court. As the *Kerr* decision makes clear, the distinctive aspects of letters of credit are of themselves irrelevant to deciding which provision of the letter should be given controlling effect. Any conflict in the terms of such an instrument must, instead, be resolved by resorting to standard maxims of contractual construction. In the letter of credit at issue here, the provision setting forth the expiration date follows the provision establishing the time for certification of default. Further, the certification provision, because it states a condition precedent to the bank's liability, is more "essential" to the contract as a whole than is the expiration provision. The interpretive maxims applied in *Kerr,* therefore, compel the conclusion that the date fixed in

the certification provision controls over the expiration date.

The distinctions that Paribas attempts to draw between the facts of *Kerr* and those of this case do not mandate a different conclusion. According to *Kerr,* resolving ambiguities in a letter of credit is a matter of contractual construction. It follows, then, that unless any of the distinctive facts of this case implicate maxims of construction that were not implicated in *Kerr* and that would compel a different interpretation of Paribas' letter of credit, any differences between *Kerr* and this case are of no consequence to the question of how the ambiguity in that letter of credit should be resolved. Paribas has not brought any such maxim of construction to our attention, and we have been unable to think of one.

■ Although the distinctive facts of this case do not, therefore, have any significant bearing on the issue of contractual construction, they do, at least at first blush, seem to have some bearing on the quite different issue of equitable estoppel, an issue not presented in *Kerr.* Immediately upon issuance of the letter, Exxon realized that there was a problem with the expiration date. Indeed, Exxon later tried to cover itself by twice asking Houston to obtain an extension of that date. At no time, however, did Exxon contact Paribas to clear up the ambiguity. Paribas, faced with Exxon's silence and taking the expiration date at face value, decided to release its security when that date passed.

Although these facts may evoke sympathy for Paribas' position, they are insufficient to establish a claim of estoppel against Exxon. Under Texas law, one of the essential elements of the defense of estoppel is "reasonable or justified reliance" on the statements, silence, or conduct of the person to be estopped.[14] Paribas had no knowledge of any of Exxon's potentially misleading statements or actions, for example, its efforts to have Houston change the expiration date; conse-

---

14. *Douglas v. Aztec Petroleum Corp.,* 695 S.W.2d 312, 317 (Tex.Ct.App.1985); see also *Traylor v. Gray,* 547 S.W.2d 644, 653 (Tex.Civ.App.1977); *Clifton v. Ogle,* 526 S.W.2d 596, 603 (Tex.Civ. App.1975).

quently, Paribas cannot claim that it relied on those statements or actions. Although Paribas can tenably claim that it relied upon Exxon's silence, rather than Exxon's actions, its reliance in this regard was not reasonable. Paribas' reliance on Exxon's silence could be considered reasonable only if it were established that, as a matter of law or of commercial practice, beneficiaries like Exxon have the primary responsibility for identifying and avoiding ambiguities in letters of credit as well as for initiating negotiations to eliminate them.[15] Absent some such rule placing the risks associated with ambiguities on one party or the other, the parties to an ambiguous letter of credit are in the same position as are parties to any other ambiguous contract: neither can assume from the other's silence that the other has tacitly acquiesced in the construction of the contract that favors him. *Kerr* informs us that Texas law does not, as a general rule, place the risks associated with ambiguity on the beneficiary.

For these reasons, we AFFIRM the judgment of the district court.

### ORDER

Construing Exxon's Motion to Remand for Attorney's Fees as a petition for rehearing, it is DENIED. The motion is untimely. See Fed.R.App.Proc. 40.

**15.** See generally *Clifton,* 526 S.W.2d at 602 (reliance on silence may be justified if the silent party has a "duty to speak").