

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00135-CV

———————————————

BEACH STREET FOODS, INC., KHALIDA SALEEMI, JAWAID ALAM, AND UMME ALAM, Appellants

V.

GRANDY'S, LLC, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-300779-18

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Beach Street Foods, Inc. operated a restaurant under a sublease agreement (the Sublease) and a franchise agreement (the Franchise Agreement) (collectively, the Agreements) with Appellee Grandy's, LLC. Appellants Khalida Saleemi, Jawaid Alam (Alam), and Umme Alam[1] (Guarantors) guaranteed Beach Street's obligations under the Agreements. Alam sold the restaurant to a third party without first obtaining Grandy's written approval to assign the Agreements, and in 2016, Grandy's stopped receiving rent and fees under the Agreements. In 2018, Grandy's sued Beach Street and Guarantors (collectively, Defendants) to recover the unpaid amounts. Defendants in turn sued the third party to whom Beach Street had sold the restaurant, who they contended was the true breaching party. The trial court signed a default judgment against the third-party defendant and, after a bench trial, rendered judgment against Defendants and awarded Grandy's $112,148.49 in damages, plus attorney's fees. Defendants now appeal.

In five issues, Defendants argue that the pleadings do not support the damages award (first issue), that Grandy's was estopped from asserting its claims (second issue); that the judgment against Guarantors cannot be upheld because the underlying liability on which it was based was unproved and unsupported by the pleadings (third issue); that the judgment cannot be upheld on an alternative quantum meruit theory (fourth

---

[1]Umme Alam is Jawaid Alam's wife.

issue); and that the attorney's fee award was improper (fifth issue). We affirm the judgment as modified.

## Background

Beach Street became a party to the Agreements by assignment. The original lessee and franchisee was Millennium Foods, Inc. Alam, Millennium's president, signed the Agreements on Millennium's behalf.[2] Guarantors jointly signed a guaranty in connection with that transaction. With Grandy's written approval, Millennium Foods assigned the Agreements to Beach Street in 2013; Alam, who was also Beach Street's president, executed the assignment for both Beach Street and Millennium. On the same day, Guarantors each signed a guaranty covering Beach Street's obligations under the Agreements.

In both the 2008 guaranty and the 2013 guaranties, Guarantors unconditionally guaranteed first Millennium's and then Beach Street's payments under the Agreements. Guarantors agreed that their obligations would continue notwithstanding any assignment of the Agreements, and they waived any notice of default or of any demand on Beach Street.

Under the Sublease, Beach Street agreed to pay monthly rent without demand or notice, and late rent payments accrued interest. Beach Street also had to pay when due any ad valorem taxes assessed on the restaurant's personal property. The Sublease

---

[2]Alam owned 80 percent of Millennium, and Saleemi owned the other 20 percent.

3

terminated when either the Franchise Agreement or the master lease did, whichever was earlier. Because the master lease had an earlier end date of December 11, 2016 (the Franchise Agreement's term ended in December 2021), the master-lease end date applied. Beach Street could extend the Sublease, however, by asking Grandy's to exercise its option to extend the master lease.[3] The Sublease also contained a hold-over provision under which Beach Street would lease the property as a tenant at will if Beach Street or its related parties—including Beach Street's successors or assigns[4]—retained possession after the Sublease's expiration. The Sublease prohibited Beach Street from assigning the agreement without Grandy's prior written approval.

Under the Franchise Agreement, Beach Street agreed to pay three weekly recurring fees—a royalty fee and two advertising fees—based on Beach Street's sales for the preceding week. Beach Street agreed that if Grandy's terminated the agreement, Beach Street would pay any outstanding fees within 15 days. Like the Sublease, the

---

[3]Grandy's appears to interpret the Sublease as providing that so long as Grandy's extended the master lease, the Sublease would automatically continue until the Franchise Agreement's end date, regardless of whether Beach Street asked for the Sublease to be extended. That interpretation does not address the Sublease language that required Beach Street to ask Grandy's to extend the master lease and gave Beach Street a deadline to do so. But regardless of whose lease interpretation we agree with, we hold below that Beach Street continued to operate the restaurant on the premises and therefore continued to be subject to the Sublease's terms.

[4]The Sublease defined "Related Parties" to include Beach Street's "officers, directors, shareholders, employees, agents, successors, assigns, contractors, and invitees."

Franchise Agreement prohibited Beach Street's assigning the agreement without Grandy's prior written approval.

In December 2013, Alam sold the restaurant or some part of its business to Mohsin Hemani. Grandy's did not give written approval for Beach Street to assign its obligations under the Agreements to Hemani.

In 2017, Grandy's notified Alam that Beach Street had defaulted under the Agreements. The next month, Grandy's sent notice to Defendants that because Beach Street had not cured its default, Grandy's was terminating the Franchise Agreement and retaking possession of the leased premises. In 2018, Grandy's sued Defendants to recover the still-unpaid rent, taxes, and fees. Defendants filed a third-party petition against Hemani. After Hemani failed to answer, the trial court signed a default judgment against him.

Grandy's and Defendants tried the case to the bench. Before the trial's start, Defendants argued that Grandy's petition alleged only a suit on a sworn account and did not include a general breach-of-contract claim and that, therefore, Grandy's could not proceed on a breach-of-contract theory. The trial court made no ruling at that time, and the case proceeded to trial. Defendants raised the same argument again in a motion for directed verdict after Grandy's presented its case. The trial court denied the motion. After trial, the trial court signed a judgment awarding Grandy's $112,148.49 in damages and $7,000 in attorney's fees, plus appellate attorney's fees. The judgment also incorporated the court's previous default judgment against Hemani.

## Standard of Review

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising issues challenging the evidence's legal or factual sufficiency to support the judgment. *Id.* We apply the same standard when reviewing the sufficiency of the evidence to support implied findings that we use to review the evidentiary sufficiency of jury findings or a trial court's express findings of fact. *Id.*; *Liberty Mut. Ins. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). We must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Liberty Mut.*, 295 S.W.3d at 777.

Several of Defendants' issues challenge the evidence's legal sufficiency. We may sustain a legal-sufficiency challenge only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields*, 526 S.W.3d at 480; *see also Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding

6

if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

Defendants also challenge the trial court's failure to find estoppel and waiver, affirmative defenses on which Defendants had the burden of proof. *See Shields*, 526 S.W.3d at 480 n.26. When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of that issue. *Id.* at 480; *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

## Fair Notice of Contract Claim

In their first issue, Defendants assert that the trial court erred by rendering judgment on damages that are not supported by Grandy's pleadings. They contend that the petition did not give fair notice that Grandy's was asserting a breach-of-contract claim against Beach Street and gave notice only of a sworn-account claim. We disagree.

### A.    Applicable Law

"Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see Li v. Pemberton Park*

7

*Cmty. Ass'n*, 631 S.W.3d 701, 705 (Tex. 2021) (stating that even vague legal terminology provides fair notice "if it alerts the opposing party of the conduct for which the pleader intends to hold him [or her] liable or otherwise legally responsible" (cleaned up)). Because Defendants did not file special exceptions, we liberally construe the petition in Grandy's favor. *See* Tex. R. Civ. P. 90; *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *see also Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) (stating that in the absence of special exceptions, "[e]very fact will be supplied that can reasonably be inferred from what is specifically stated" (cleaned up)).

**B.    Analysis**

The petition included a paragraph pleading a suit on a sworn account. This paragraph was titled "Sworn Account" and referenced an attached affidavit and account statement. *See* Tex. R. Civ. P. 185. The sworn-account paragraph was immediately followed by a paragraph titled "Contract," which stated that "[i]n the alternative," Beach Street had contracted with Grandy's and that Grandy's had fully complied with the agreement. As Defendants point out, both the sworn-account paragraph and the contract paragraph use sworn-account-type language, alleging that Beach Street had become obligated to pay Grandy's reasonable, usual, and customary prices for the goods received by Beach Street. *See id.* Unlike the sworn-account paragraph, however, the contract paragraph did not refer to the attached affidavit or account statement. The petition then alleged that Beach Street and Guarantors had defaulted on their respective obligations. Finally, the petition included a paragraph alleging quantum meruit that, like

the contract paragraph, was pleaded in the alternative. Grandy's also attached to its petition a copy of the guaranties, which referenced the Agreements.

"[A] suit on a sworn account is not an independent cause of action." *S. Mgmt. Servs., Inc. v. SM Energy Co.*, 398 S.W.3d 350, 353 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Rather, it is a procedural device for proving certain contract disputes. *Id.*; *see Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979). And a review of Grandy's allegations gave Defendants fair notice of the contractual dispute's nature, the basic issues raised by the petition, and the type of evidence that might be relevant to Grandy's suit. In the "Contract" paragraph, Grandy's pleaded alternatively that Beach Street had contracted with Grandy's, that Grandy's had "fully complied with the agreement," and that Beach Street had defaulted on its payment obligations. *See Low*, 221 S.W.3d at 612; *see also Myan Mgmt. Grp., L.L.C. v. Adam Sparks Fam. Revocable Tr.*, 292 S.W.3d 750, 754 (Tex. App.—Dallas 2009, no pet.) (stating contract claim elements). Defendants contend that the petition is insufficient to provide fair notice because it does not even mention "*any* contract between the parties to support any claims." But Defendants' own pleadings showed that they understood which agreements Grandy's had based its claims on. In their motion for leave to file their third-party petition, they alleged that Grandy's had "sued Defendants based upon a suit on a sworn account when, in fact, the suit is based upon a breach of a Grandy's Franchise Agreement and associated agreements concerning the Franchise

9

Agreement." *See Li*, 631 S.W.3d at 705 (observing that defendant's trial evidence indicated that it understood the substance of plaintiff's argument).

Defendants further argue that Grandy's petition does not allege a breach-of-contract claim because it does not "specify the minimum necessary elements of an action for breach of contract." We disagree that a pleading must specify a claim's every element to give fair notice. *See Roark*, 633 S.W.2d at 809.

Because we conclude that the petition gave Defendants fair notice of the breach-of-contract claim against Beach Street, we do not address their argument that they were not required to specially except because (they contend) nothing in the petition suggested a breach-of-contract claim. *See* Tex. R. App. P. 47.1. We also need not address their alternative argument that the judgment cannot be upheld under the sworn-account theory. *See id.* We overrule their first issue.

### Estoppel and Waiver

Defendants assert in their second issue that the trial court erred by rendering judgment for Grandy's because Grandy's "was estopped from asserting the alleged damages that were waived or expired as against [Defendants]."[5]

---

[5]Defendants' arguments under this issue focus mostly on the Agreements' continuing validity. In one sentence, however, they also challenge other breach-of-contract claim elements: Beach Street's breach and Grandy's damages arising from that breach. *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (listing breach-of-contract elements). Because Defendants also challenge these elements under their third issue, we will consider these arguments as part of that issue. *See* Tex. R. App. P. 38.1(f), (i).

## A.    Applicable Law and Estoppel Analysis

Defendants' arguments mention waiver and estoppel essentially interchangeably, but those doctrines are distinct and separate. *Shields*, 526 S.W.3d at 486. "Waiver occurs when a party intentionally relinquishes a known right or engages in conduct inconsistent with claiming that right." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 709 (Tex. 2021). Estoppel, on the other hand, "prevents one party from misleading another to the other's detriment or to the misleading party's own benefit." *Shields*, 526 S.W.3d at 486 (cleaned up).

Regarding estoppel, Defendants do not specify whether they assert promissory or equitable estoppel, nor do they include any statements that might invoke either doctrine's substance. *Cf. Li*, 631 S.W.3d at 704 (stating that petitioner had pleaded statute's substance despite not citing to it or using its wording). But to establish either of those defenses, Defendants had to show that they had detrimentally relied on a promise or a false representation by Grandy's. *See Shields*, 526 S.W.3d at 486 (setting out elements of equitable estoppel); *KC Pharmacy, LLC v. JPMorgan Chase Bank, N.A.*, No. 01-20-00409-CV, 2021 WL 1095905, at *7 (Tex. App.—Houston [1st Dist.] Mar. 23, 2021, no pet.) (mem. op.) (stating elements of promissory estoppel); *see also Clifton v. Ogle*, 526 S.W.2d 596, 603 (Tex. App.—Fort Worth 1975, writ ref'd n.r.e.) (noting difference between two doctrines). But nowhere in Defendants' brief do they discuss reliance or explain how the evidence established that element or any other estoppel

11

element. *See* Tex. R. App. P. 38.1(i). We overrule the part of Defendants' second issue asserting estoppel. *See id.*

## B. Waiver Analysis

Regarding Defendants' waiver arguments, their brief addresses the Sublease and Franchise Agreement separately, and we do the same.

### 1. The Franchise Agreement

Defendants argue that Grandy's waived its right to enforce the Franchise Agreement. This argument comes from reading two provisions of the Franchise Agreement together. First, Beach Street could not assign the agreement without Grandy's prior written approval, and any non-approved assignment attempt by Beach Street would be void and constitute a breach. Second, the agreement limited how long either party had to sue for most breaches, giving the party two years from the date on which it "knew or should have known of the facts giving rise" to a claim. Defendants argue that under these terms, Grandy's had to sue for Beach Street's alleged contractual breach no later than March 17, 2017, because Grandy's knew about Beach Street's assignment to Hemani no later than March 17, 2015.[6] Under their reading of the

---

[6]This date comes from emails that Defendants rely on to show that Grandy's knew about Hemani's purchasing the restaurant. We discuss those emails below.

12

agreement, if Grandy's did not authorize the assignment,[7] then under the agreement's own terms, Grandy's waived its Franchise-Agreement-based claim by not suing before March 17, 2017.

To agree with Beach Street's argument, we would have to agree that Grandy's sued Beach Street because of an unauthorized assignment or ignore the full text of the Franchise Agreement's limitation term. As Grandy's points out, the term expressly stated that certain claims were excepted from its application, and those excepted claims included any claims arising out of Beach Street's failure to pay what it owed Grandy's under the agreement. Here, Grandy's sued to recover the contractual fees, and it invoked the agreement's transfer restriction not as a basis for its breach-of-contract claim, but rather as a response to Beach Street's defensive theory that the transfer to Hemani terminated Beach Street's financial obligation to Grandy's. Because Grandy's sued Beach Street for nonpayment of fees, the limitation term did not apply.[8]

Further, the evidence does not establish that Grandy's knew or should have known that Beach Street had assigned the Agreements. What matters for our analysis

---

[7]Defendants also argue that Grandy's in fact tacitly approved the transfer by knowing about it and taking no action, and thus Grandy's did not have valid contracts with Defendants on which it could sue. We discuss those arguments below.

[8]Grandy's argues that the limitation term sets up a limitations defense but is not a waiver provision. It points to other language in the agreement stating that Grandy's failure to exercise any right under the agreement would not constitute a waiver of its right to enforce other terms. Regardless of how we categorize the limitation term, it does not apply to Grandy's breach-of-contract claim.

is not whether Alam sold *something* to Hemani—we assume that he did. Instead, the relevant questions are whether the evidence established as a matter of law that Beach Street transferred its contractual obligations to Hemani and, if so, whether Grandy's knew or should have known that Beach Street had done so, thereby triggering the contract provision that Defendants rely on for their waiver argument. *See Shields*, 526 S.W.3d at 480.

The evidence did not establish the terms of Beach Street's sale to Hemani. If Beach Street assigned its contractual obligations, the evidence is undisputed that it did so without Grandy's prior approval, and no evidence showed that Grandy's had actual knowledge that the sale or assignment had occurred. Alam testified that he spoke to someone with Grandy's who told him that Hemani could qualify to become the franchisee of record if he did a "good job and everything," but Alam also testified that no paperwork was completed to make that happen.

The evidence also fails to establish as a matter of law that Grandy's had reason to know that Alam had sold the restaurant to Hemani or assigned the Agreements to him, and some evidence supports an opposite finding. Alam testified that Hemani was running Beach Street under his name, and emails relied on by Defendants[9] showed Hemani's representing to a vendor that the company with the franchise was "Beach

---

[9]We note that these emails were forwarded by Hemani to Alam, something he would presumably have no reason to do if Alam no longer had any interest in the business.

14

[S]treet Foods" and indicated that Hemani was, with Alam's permission, using Beach Street's bank account[10] to pay the restaurant's bills until an "[o]fficial [t]ransfer from Grandy's," a transfer that never happened.

Certainly, the emails showed that Grandy's representatives understood that Hemani was running the restaurant, but the emails did not show that he was doing so as an owner rather than a manager. Instead, they confirm Grandy's understanding that Hemani was *not* the official franchisee. According to the emails, when Hemani expressed interest in becoming the franchisee of record, a Grandy's employee told him that to make that happen, he would first have to work out a deal with Alam. Hemani was told that once he and Alam had an agreement, Grandy's representatives could help him with the franchisee paperwork but that the representatives "can't do anything until [he] negotiate[d] terms with [Alam]." No follow-up emails or paperwork appear in the record.

Defendants also rely on March 2015 emails that Hemani exchanged with a Coca-Cola vendor, on which two Grandy's employees were copied, as evidence showing that Grandy's should have known that Hemani had purchased the restaurant. In these emails, the vendor and Hemani discuss rebates for the restaurant, but they are not clear about whether Hemani or Beach Street was the new owner.

---

[10]Hemani stated in the email that he was using "your" bank account, so it is unclear whether the account was in Beach Street's name or Alam's, but in either case it appeared to be the bank account that Beach Street had been using for the restaurant.

15

The exchange began with Hemani's asking about the rebate's status. When the vendor said that the rebate had been paid to the restaurant owner on file, which, according to his records, was Millennium, Hemani responded that Millennium was the prior owner. The vendor asked, "When did you acquire?" but Hemani's response to that question was not included in the exhibit. In a follow-up email, the vendor mentioned a check that had been sent for marketing funds for two stores, one of which was the Beach Street store. About a week later, Hemani notified the vendor that he had sent the vendor an updated W-9. The W-9's contents[11] are not in the record or mentioned in the emails. The vendor responded that "[w]e are processing the w9 so that going forward Beach Street will be paid separately to you as the owner" and that a check had been reissued for $3,465, "of which $2,293.65 is for Beach St and was sent to Beach St." But none of these email chains make explicit whether the vendor is referring to Beach Street or to Hemani as the new owner in place of Millennium. And these emails were between Hemani and the vendor and were merely copied to a Grandy's employee; there is no evidence that the Grandy's employee read them, even

---

[11]Assuming Hemani and the vendor were referring to an IRS W-9 form, this form's use raises a suspicion about whether, if the Grandy's employees read these emails, Grandy's at least should have investigated Hemani's role with Beach Street because the form could have been used to furnish the vendor with Hemani's taxpayer identification number so that the vendor could pay the rebate directly to Hemani rather than to the Beach Street entity. But we do not have the form and do not know why the vendor requested it, and suspicion is not evidence. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755 (Tex. 2003).

assuming that they were enough to put Grandy's on notice. Also, these emails with the vendor were exchanged in March 2015, around the same time that Grandy's representatives told Hemani what he needed to do if he wanted to become the franchisee for that restaurant. That is, Grandy's emails showed its employees' belief that Beach Street still owned the restaurant. Accordingly, whatever role Grandy's believed Hemani to have with Beach Street, nothing indicates that Grandy's had any reason to know that Beach Street had sold its interest in the store. Because the evidence does not conclusively establish that Grandy's waived its right to enforce the Franchise Agreement, we overrule this part of Defendants' second issue.

### 2. The Sublease Agreement

Regarding the Sublease, although Defendants frame their arguments in terms of waiver, their argument is less about whether Grandy's intentionally relinquished or acted inconsistently with its rights and more that the parties had no valid lease contract between them on which Grandy's could sue. Specifically, Defendants maintain that because the Sublease expired by its own terms on December 11, 2016, Beach Street owed no rent after that date.[12] But as we explain, even if the Sublease had expired in 2016, Beach Street continued to be bound to the Sublease's terms during the restaurant's operation.

---

[12]This argument does not address the several months' rent that went unpaid *before* December 2016.

At trial, Defendants asked Grandy's representative—Joseph Hillis, its comptroller—if the Sublease had been extended, and he responded, "I can't recall actually seeing that communication"—which would have gone to Grandy's president—"but it would have—they would have extended it as they were continuing to operate the restaurant." Hillis explained that the Sublease's extension had to have occurred because otherwise Grandy's would not have exercised its option to extend the master lease, and the restaurant could not have continued operating.[13] Hillis was then questioned about the Sublease's hold-over provision under which the tenancy continued as a tenancy at will, "subject to all the covenants, terms, provisions[,] and obligations of th[e] Sublease, except that [the base rent would increase]." When asked if the sublessee was holding over after December 2016, he responded that the lease had been renewed. On appeal, although Defendants argue that Grandy's presented no evidence to show that the sublease was extended, they do not address the hold-over provision.

Grandy's evidence showed that the restaurant had continued to operate after 2016, and Defendants do not argue otherwise. They do, however, argue that Beach Street could not be liable for any Sublease obligations after Hemani purchased the restaurant. To the extent that Defendants argue that only Hemani could be liable as a

---

[13]Further, Grandy's account statement showed that in 2017, it charged Beach Street the rent it would have charged under an extension.

hold-over tenant because he, not Beach Street, continued to possess the premises, we disagree. As we have already discussed, the Agreements prohibited any unauthorized attempted assignment by Beach Street and rendered any such assignment void. Further, as noted above, Alam's testimony was that he "sold the Grandy's" to Hemani but "did not sell the Beach Street, because [Hemani] was running [the corporation] under [Alam's] name."[14] Accordingly, the only evidence was that Hemani was operating the restaurant as Beach Street and under the Sublease's terms. Whatever arrangement Hemani and Alam had between them, and regardless of whether Beach Street exercised its option to extend the Sublease, the evidence that supported a finding about the restaurant's continued operation also supported a conclusion that Beach Street remained bound by the Sublease's terms under the hold-over provision. We overrule the remainder of Defendants' second issue.

### Evidentiary Sufficiency on Claim Against Guarantors

Defendants argue in their third issue that the trial court reversibly erred by rendering judgment against Guarantors because their liability "was conditioned on an underlying and unproven liability and unsupported by the pleadings."

---

[14]To the extent that this testimony indicates that Beach Street attempted to sublease the property to Hemani, the Sublease prohibited Beach Street from doing so without Grandy's prior written consent, and even a permitted sublease would not have released Beach Street from its obligations under the Sublease.

Defendants argue under this issue that Grandy's cannot use a suit on a sworn account to hold Guarantors liable for Beach Street's obligations. *See Nw. Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 703 (Tex. App.—Amarillo 1998, pet. denied) ("Because a guarantor of an account is a 'stranger' to the account, Rule 185 does not apply to a guarantor under a written guaranty agreement."). But Grandy's did not plead a sworn-account claim to recover against Guarantors; it alleged that Guarantors had executed guaranties, which were attached to the petition and under which Guarantors had guaranteed Beach Street's payment obligations; that Beach Street had defaulted; and that Guarantors had failed to pay. In other words, Grandy's pleaded breach-of-guaranty claims against Guarantors. *See Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 246 (Tex. App.—Houston [1st Dist.] 2017, no pet.). To the extent that Defendants argue again that Grandy's did not assert a breach-of-contract claim against Beach Street, we have already rejected that argument. We overrule this part of Defendants' third issue.

In the remainder of this issue, Defendants challenge the evidentiary sufficiency of the judgment against them. To prevail on its breach-of-guaranty claims, Grandy's had to prove (1) the guaranty's existence; (2) the terms of the underlying contracts; (3) the occurrence of the conditions upon which Guarantors' liability is based; and (4) Guarantors' failure or refusal to perform their promise. *See Byrd v. Est. of Nelms*, 154 S.W.3d 149, 157 (Tex. App.—Waco 2004, pet. denied).

20

### A. Guaranty's Existence

No one disputes that Alam and the other Guarantors signed guaranties in 2013 when Millennium assigned the Agreements to Beach Street. Grandy's produced these guaranties at trial, Alam acknowledged signing his, and Umme Alam and Salleemi did not testify or produce evidence that they had not signed theirs. Alam testified that he had signed the guaranty in connection with a promissory note that he had then paid off, but the guaranties do not mention a promissory note. *See Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 197 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (stating parol evidence inadmissible to vary unambiguous contract's terms). Instead, the guaranties stated that they were given "with respect to the Franchise Agreement . . . and the Sublease" between Beach Street and Grandy's.

### B. Valid Agreement with Beach Street; its Terms

As for the underlying agreements' terms, for purposes of establishing the breach-of-guaranty claims' second element, Grandy's introduced the Agreements as evidence. Defendants do not argue that Grandy's failed to prove up the Agreements' terms or that the Agreements were ambiguous. Instead, they argue that Grandy's failed to show that there were any terms in the Agreements that "would give rise to obligations owed to Grandy's by the Guarantors." That is, they argue that Grandy's failed to show that the Agreements were valid, existing agreements with Beach Street in 2016 and 2017, the time frame for which Grandy's alleged that Beach Street failed to make payments.

Defendants' arguments in this part of their brief again assert that Guarantor's obligations under the Sublease expired when the Sublease between Grandy's and Beach Street was not extended and that Grandy's had waived any causes of action based on the Franchise Agreement. We have already rejected these arguments.[15] Accordingly, we likewise reject Defendants' argument that Grandy's failed to meet its burden to establish valid agreements for purposes of its breach-of-contract claim against Beach Street and that Grandy's failed to prove the underlying agreements' terms for purposes of its breach-of-guaranty claims against Guarantors. We overrule this part of Defendants' third issue.

## C. Beach Street's Breach and Guarantors' Liability

Regarding the breach-of-guaranty claims' third element, Defendants contend that Grandy's presented no evidence "regarding the occurrence of conditions establishing the Guarantors' liability other than presenting an accounting statement with its pleadings that it alleges contained amounts due and owing by Beach Street." Regarding the fourth element, Defendants argue that the evidence is insufficient to show that Guarantors refused to perform their promises under the guaranties or that Guarantors were given "notice as to any outstanding debt due and owing by Beach

---

[15]To the extent that Defendants argue that Guarantors were relieved of their obligations because Beach Street had assigned the Agreements to Hemani, we overrule that argument. Even if Beach Street had successfully assigned the Agreements to Hemani, the guaranties provided that they continued in Grandy's favor notwithstanding the Agreements' assignment.

Street during the time it was a party to the Sublease and Franchise Agreements." We thus review the evidence supporting a finding that Beach Street failed to pay amounts owed under the Agreements and that Guarantors' liability had been triggered under the guaranties.

Grandy's introduced the guaranties as evidence.[16] In the 2013 guaranties,[17] Guarantors "unconditionally guarantee[d]" the "full, complete[,] and timely payment and performance" of each of the Franchise Agreement's and Sublease's terms, and Guarantors' liability was made independent of Beach Street's. Guarantors further

---

[16]The guaranties have a choice-of-law provision requiring the documents to be construed under Tennessee law. Defendants say that this provision is "notable," but they do not explain its significance. Nor do they assert any difference between Texas and Tennessee law on guaranties. And nothing in the record indicates that Defendants asked the trial court to apply Tennessee's laws. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding); *Progressive Child Care Sys., Inc. v. Kids 'R' Kids Int'l, Inc.*, No. 2-07-127-CV, 2008 WL 4831339, at *2 (Tex. App.—Fort Worth Nov. 6, 2008, pet. denied). We thus assume that Texas and Tennessee have identical laws construing guaranties. *See* Tex. R. Evid. 202; *Bobcat N. Am., LLC v. Begley*, No. 03-18-00033-CV, 2019 WL 1272710, at *2 (Tex. App.—Austin Mar. 20, 2019, no pet.) (mem. op.). Even if we were to construe the guaranties under Tennessee law, however, Defendants do not explain how that would affect the outcome here. In Tennessee, as in Texas, courts construe guaranties as they do other contracts, giving the contract's words their usual and ordinary meaning. *See 423 Colony, Ltd. v. Indep. Ex'rs of Est. of Kern*, No. 02-18-00032-CV, 2019 WL 2223579, at *2 (Tex. App.—Fort Worth May 23, 2019, pet. denied) (mem. op.); *Galleria Assocs., L.P. v. Mogk*, 34 S.W.3d 874, 876–77 (Tenn. Ct. App. 2000).

[17]The 2008 guaranty and 2013 guaranties have essentially identical terms. Hillis testified that the 2013 guaranties superseded the 2008 guaranty, although nothing in the 2013 guaranties says that. At trial, Grandy's based its claim on Guarantors' liability under the 2013 guaranties, so we focus on those instruments.

23

waived any notice of default, notice of demand on Beach Street, and "any other notice of default under the [underlying] Agreements." Guarantors waived any limitations defense; agreed to be bound to the guaranties even if the underlying agreements were assigned; and agreed that if Grandy's did not enforce the underlying agreements against Beach Street, that choice would have no effect on Guarantors' obligations under the guaranties. In sum, Guarantors' liability for payment was unconditional, with Beach Street's default being the only triggering event for Guarantors' liability.

As for Beach Street's default, the evidence at trial sufficiently established the default's occurrence and amount. The Sublease required Beach Street to pay monthly rent and any taxes assessed against the business, regardless of whether Beach Street was operating under an extended lease or holding over. The Franchise Agreement required Beach Street to pay a monthly franchise fee and two monthly advertising fees. Grandy's presented as evidence an account statement and Hillis's testimony that after June 2016, Beach Street did not pay what it owed under the Agreements.

Some entries on the account statement were self-explanatory, like the monthly rent entries. Other entries needed explanations, which Hillis provided. For example, Hillis explained which charges were for the franchise and advertising fees authorized by the Franchise Agreement. As Hillis noted, the Franchise Agreement fees were calculated as a percentage of the store's sales, and the descriptions for those charges included the number from which the fees were calculated. Hillis further explained that if a store does not timely submit a revenue report, Grandy's temporarily calculates the

fee with a placeholder number and then adjusts the calculation when Grandy's receives the actual sales number. That kind of calculation—a placeholder's use followed by an adjustment—is reflected in some of the September 2017 charges, as Hillis pointed out. Hillis also testified that the statement balance remained unpaid. Defendants do not assert that Grandy's miscalculated the rent, taxes, or fees, did not present evidence below that the charges were paid, and do not dispute on appeal that Grandy's received no payment for charges listed in the statement. This evidence was sufficient to establish what Beach Street still owed, and because Guarantors promised to pay amounts that Beach Street owed but did not pay, this evidence was also sufficient to prove what Guarantors owed.

Grandy's further presented evidence that in August 2017, it sent Alam a notice of default, notifying him that Beach Street was in default by at least $92,575 and stating that the Agreements could be terminated if the default was not cured. Grandy's sent a follow-up letter to all three Guarantors stating that Beach Street's default had not been cured and that Grandy's was therefore terminating the Franchise Agreement and retaking possession of the leased premises. But even had these notices been inadequate or not been sent at all, the guaranties waived notice of default—as Alam acknowledged at trial. Construing the evidence in the light most favorable to Grandy's, we hold that it sufficed to establish that Guarantors were liable under the guaranties. *See Scott's Big Truck Sales, LLC v. Auto. Fin. Corp.*, No. 02-19-00304-CV, 2020 WL 7393742, at *9 (Tex. App.—Fort Worth Dec. 17, 2020, no pet.) (mem. op.); *Norris v. Tex. Dev. Co.*,

25

547 S.W.3d 656, 663 (Tex. App.—Houston [14th Dist.] 2018, no pet.). We overrule the remainder of Defendants' third issue.

## Defendants' Remaining Arguments

In their fourth issue, Defendants argue that Grandy's quantum meruit claim cannot support the judgment. Because we have upheld the judgment on Grandy's breach-of-contract claim against Beach Street and its breach-of-guaranty claims against Guarantors, we need not address Defendants' fourth issue. *See* Tex. R. App. P. 47.1.

## Attorney's Fees

In Defendants' fifth and final issue, they challenge the trial court's attorney's-fees award. Grandy's sought and was awarded fees under Texas Civil Practice and Remedies Code Section 38.001, which permits a prevailing party in a breach-of-contract suit to recover reasonable and necessary attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001. Defendants make two primary arguments under this issue, both of which we reject.

First, Defendants assert that the attorney's-fees award is unsustainable because the judgment must be reversed on Grandy's contract claims, and therefore Grandy's is not the prevailing party. *See id.* We have overruled Defendants' other challenges to the judgment on Grandy's breach-of-contract claims, and thus Grandy's remains the prevailing party on those claims. We therefore overrule this part of Defendants' fifth issue.

26

Second, Defendants argue that Grandy's conclusory attorney's-fee testimony was insufficient to support the award. Grandy's attorney testified about tasks he had performed thus far in representing his client, the approximate time that he spent on those tasks, his hourly rate, his experience, and his opinion that his hourly rate was reasonable and that the fees he had requested were reasonable and necessary. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019) (discussing evidence needed to support attorney's-fees award). Defendants contend that the testimony about which tasks the attorney performed and the time spent on those tasks was conclusory.[18] Defendants do not, however, address what Chapter 38 has to say about the evidence needed to support an award under that chapter.

Because the case was tried to the bench, Section 38.004 authorized the trial court to judicially notice usual and customary attorney's fees, and we may presume that it did so. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.004; *Rohrmoos*, 578 S.W.3d at 490 n.9; *Tolpo v. Denny*, No. 02-15-00231-CV, 2016 WL 1601068, at *7 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op.). And Section 38.003 created a rebuttable

---

[18]Defendants complain that Grandy's did not produce "any billing records, account summaries, or any other physical document on which [Grandy's attorney] based his calculation of fees" and that "[a]ll hourly estimates given by Grandy's counsel during testimony on attorney's fees were approximate." *See Rohrmoos*, 578 S.W.3d at 502 ("[B]illing records are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested."). Because the award is sustainable under Chapter 38 regardless of the attorney's fees testimony's sufficiency, we do not address this argument. *See* Tex. R. App. 47.1.

presumption that those usual and customary fees were reasonable. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.003; *Rohrmoos*, 578 S.W.3d at 490 n.9; *Robinson v. Ochoa*, No. 13-16-00357-CV, 2018 WL 1633516, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 5, 2018, pet. denied) (mem. op.). Defendants did not put on any evidence to rebut this presumption. Thus, the trial court had sufficient evidence on which to base its award.[19] *See Hernandez v. Zapata*, No. 04-19-00507-CV, 2020 WL 3815932, at *8 (Tex. App.—San Antonio July 8, 2020, no pet.) (mem. op.); *Logan v. Randall*, No. 05-19-00043-CV, 2020 WL 948381, at *8 (Tex. App.—Dallas Feb. 27, 2020, pet. denied) (mem. op.).

Defendants also complain about the appellate attorney's fees award, arguing that because the award was not conditioned on their appeal's being unsuccessful, the award must be reversed. Grandy's concedes (and we agree) that the appellate fees award was improper because the fees were awarded unconditionally. Because an unconditional

---

[19]No language in the guaranties conditioned Guarantors' liability on presentment, but Texas Civil Practice and Remedies Code Section 38.002 usually requires presentment to recover attorney's fees under Section 38.001. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002. Guarantors do not address the guaranties' waiver-of-notice provisions or the letters that Grandy's sent to Guarantors notifying them of Beach Street's default, either in this part of their brief or in the part challenging evidentiary sufficiency. *See Caro v. Hous. Auth. of Austin*, 794 S.W.2d 901, 905 (Tex. App.—Austin 1990, writ denied) (holding that notice to tenant that he had defaulted by failing to pay rent and that the landlord thus intended to terminate the lease qualified as a demand for payment). But even if the guaranties required presentment and the letters did not constitute a demand under Section 38.002, Grandy's pleaded that "[a]ll conditions precedent have been performed or have occurred," and Defendants failed to specifically deny presentment. *See* Tex. R. Civ. P. 54; *Wade & Sons, Inc. v. Am. Standard, Inc.*, 127 S.W.3d 814, 825 (Tex. App.—San Antonio 2003, pet. denied). Thus, Grandy's could recover fees under Section 38.002 without establishing presentment.

award has a chilling effect on the paying party's exercise of legal rights—effectively punishing the party for a successful appeal—a trial court must condition any appellate-attorney's-fees award on the paying party's unsuccessful appeal. *See Sundance Mins., L.P. v. Moore*, 354 S.W.3d 507, 515 (Tex. App.—Fort Worth 2011, pet. denied). We sustain this part of Defendants' fifth issue. But this error does not require reversal. Instead, we may modify the judgment to make the award conditional. *Id.* We do so in this case and overrule the remainder of Defendants' fifth issue.

## Conclusion

We sustain Defendants' fifth issue in part, and we modify the trial court's judgment to make the award of appellate attorney's fees conditioned on Defendants' unsuccessful appeal. Having overruled the remainder of Defendants' dispositive issues, we affirm the judgment as modified.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  January 20, 2022

29